UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIEL KLINK,<br><br>                    Plaintiff,<br><br>          v.<br><br>ABC PHONES OF NORTH CAROLINA, INC.,<br><br>                    Defendant. | Case No.  20-cv-06276-EMC<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Docket No. 15 |

Plaintiff Ariel Klink filed a class action complaint against Defendant ABC Phones of North Carolina, Inc. ("ABC") asserting eight causes of action and alleging, among other things, that ABC failed to pay minimum and overtime wages, failed to provide lawful meal and rest periods, failed to pay wages at the time of separation, failed to furnish accurate itemized wage statements, failed to reimburse necessary expenses, and violated California's unfair competition law.  Docket No. 1-3 ("Compl.") at 14-26.

Pending before the Court is ABC's motion to compel arbitration, dismiss class action allegations, and stay this action pursuant to the Federal Arbitration Act (FAA) and the California Arbitration Act (CAA).  *See* Docket No. 15 ("Mot. to Compel").  For the foregoing reasons, the Court **GRANTS in part** ABC's motion to compel arbitration and stays this suit pending arbitration.

**I.       BACKGROUND**

A.     Factual Background

From September 24, 2018 to October 8, 2019, Ms. Klink was employed as an hourly non-exempt sales representative at ABC's retail location in Hayward, California, selling wireless

devices and services as a Verizon-authorized ABC dealer.  Compl. at 3-5.  Ms. Klink claims she typically worked five or six days a week, averaging forty-five hours per week.  *Id.* at 5.  During her employment, Ms. Klink states that she was not properly compensated because she frequently worked "off the clock."  *Id.*  Ms. Klink also claims that she consistently worked over eight hours a day and/or over forty hours a week but was not paid overtime wages.  *Id.*  The Complaint further alleges that ABC employees were regularly required to work shifts for over five hours without a meal or rest break.  *Id.* at 7.

Prior to commencing her employment, Ms. Klink was on-boarded on September 24, 2018, by ABC at its Hayward store.  Docket No. 15-1 ("Patel Decl.") ¶ 6.  ABC contends that Ms. Klink electronically completed several on-boarding tasks, including an arbitration agreement, on that day.  *Id.*  ABC explained that Ms. Klink used its online employee interface, known as the Learning Management System ("LMS"), to read and sign all training materials related to her employment. Patel Decl. ¶ 4.  Every ABC employee, including Ms. Klink, allegedly accessed the LMS by entering an assigned username along with a password they created the first time they logged onto the System.  *Id.* ¶ 4-7.  Ms. Klink does not dispute being given a unique ID or creating her own password on her first day.  *See* Docket No. 17-2 ("Klink Decl.").

A report from LMS, as produced by ABC, shows that Ms. Klink logged into the LMS for the first time on September 24, 2018, using her login credentials and viewed the arbitration agreement, which was displayed as a PDF.  Patel Decl. ¶¶ 8-15.  After viewing each page of the agreement, ABC explains that Ms. Klink was required to open another document titled "Arbitration Agreement of ABC Phones – NC," which contained language stating that by clicking a button labeled "Acknowledge" the employee was agreeing to the terms of the agreement.  *Id.* ¶ 15.  ABC claims that when a task is finished on LMS, the system automatically inserts the designated "completed" in a report that includes the title of the task and the date of completion. *Id.*  Ms. Klink's LMS report indicated that she viewed and acknowledged the arbitration agreement on September 24, 2018.  *Id.*; Patel Decl. Exhibit C-010.

Although Ms. Klink does not deny being on-boarded on September 24, 2018, or using her credentials to log into the LMS; that is where the commonalities end between the parties' accounts

United States District Court
Northern District of California

of the events that transpired that day.  *See* Klink Decl. ¶¶ 4-5.  Ms. Klink states that on her first

day, Justin Cagle, the store manager, provided her with a username, which she used to create a

password, but Mr. Cagle was "with [her] the entire time and observed [her] entering the username

and password into the system." *Id.* ¶ 6.  She also claims that Mr. Cagle "kept a record of [her]

username and password so he could access the account as necessary." *Id.*  Ms. Klink then goes on

to state that she shared her login credentials with other co-workers when their accounts were not

working. *Id.* ¶ 8.  Importantly, Ms. Klink vehemently asserts that she "did not click on the

computer button to acknowledge review and accept[] the arbitration agreement attached to

Defendant's Motion to Compel Arbitration," stating plainly that she "had never seen, reviewed,

acknowledged or agreed to the Arbitration Agreement attached as Exhibit A to Ms. Patel's

declaration." *Id.* ¶¶ 12-13.

B.   <u>Procedural Background</u>

On June 10, 2020, Ms. Klink filed this putative class action against ABC in Alameda

County Superior Court.  Docket No. 1 ("Notice of Removal") ¶ 1.  In her complaint, Ms. Klink

raised claims for: (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure

to provide lawful meal periods, (4) failure to authorize and permit rest periods, (5) failure to timely

pay wages owed upon separation from employment, (6) failure to furnish accurate itemized wage

statements, (7) failure to reimburse necessary expenses, and (8) violation of California's Unfair

Competition Law. *Id.*  On September 1, 2020, ABC filed its answer by way of a general denial

and affirmative defenses to the complaint. *Id.* ¶ 2; Docket No. 1-11 ("Answer").

ABC then filed a notice of removal to federal court on September 4, 2020 based on

diversity jurisdiction. *See* Notice of Removal.  Shortly thereafter, ABC brought the instant motion

to compel arbitration on February 9, 2021. *See* Mot. to Compel.  On June 8, 2021, the Court held

an evidentiary hearing, pursuant to 9 U.S.C. § 4, to determine whether the parties had entered into

an arbitration agreement. *See* Docket No. 29.

## II.   <u>LEGAL STANDARD</u>

A.   <u>Motion to Compel Arbitration</u>

The FAA governs the enforceability and scope of arbitration agreements.  9 U.S.C. §§ 1-

United States District Court
Northern District of California

307.  "[C]ourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, (2011); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, (2006); *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, (1989).  The FAA reflects both a "'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *Concepcion*, 563 U.S. at 339 (first quoting *Moses H. Cone*, *Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); then quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).  The FAA also contains a savings clause, which provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The generally applicable contract defenses include fraud, duress, or unconscionability, but not defenses that apply only to arbitration.  *Concepcion*, 563 U.S. at 339.

When deciding a motion to compel arbitration, a district court must "treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Shepardson v. Adecco USA, Inc.*, No. 15-cv-05102-EMC, 2016 U.S. Dist. LEXIS 46754, at *6 (N.D. Cal. Apr. 5, 2016) (citing *Chavez v. Bank of Am.*, No. C 10-653 JCS 2011, WL 4712204, at *3 (N.D. Cal. Oct. 7, 2011)).  Additionally, courts apply federal substantive law to questions regarding the interpretation and enforceability of arbitration agreements generally, and state contract law to questions concerning whether the parties agreed to arbitrate.  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  In order to determine whether a state "common law rule makes an agreement to arbitrate unenforceable, [the Court] must consider both the federal law of arbitration and the state rule at issue." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016)

## III.  **DISCUSSION**

To rule on a motion to compel arbitration, a district court must decide "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also*

4

*Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1056 (9th Cir. 2018) (finding that only after the Court "make[s] a threshold finding that the document [evidencing an agreement] at least purports to be . . . a contract" does the Court proceed to decide whether the parties should be compelled to submit their dispute to arbitration); Cal. Code of Civ. Proc. § 1281.2 ("[T]he court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists."). "If the response is affirmative on both counts, then [absent application of the savings clause] the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* Accordingly, the Court will first address whether there is a valid arbitration agreement between the parties. Having determined that there is, the Court will then explain why the agreement is enforceable.

A.   Existence of an Agreement to Arbitrate

As a threshold matter, the Court must first determine if there is a valid agreement between the parties to arbitrate before it can decide if an agreement is enforceable. *Chiron*, 207 F.3d at 1130. If the Court cannot determine a contract exists as a matter of law, and instead finds that there is a genuine issue of material fact as to whether the parties formed an agreement, then "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. During that limited trial or evidentiary hearing, the party seeking to compel arbitration would "bear[] the burden of proving [the agreement's] existence by a preponderance of the evidence," under California Law. *Rosenthal v. Great W. Fin. Sec. Corp.*, 926 P.2d 1061, 1072 (Cal. 1996).

Here, the Court held an evidentiary hearing pursuant to § 4 because, based on the parties' briefs and declarations, there was a genuine factual dispute as to whether Ms. Klink entered into an agreement to arbitrate with ABC. At the evidentiary hearing, a preponderance of the evidence established that there was indeed an agreement to arbitrate between the parties.

1.   There Was a Factual Dispute as to the Existence of an Arbitration Agreement

ABC bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. AM., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). Under both California law and the FAA, the enforceability of an arbitration agreement depends on the actual consent of the parties. *Id.* at 1284 ("[U]nder California law, the

1   essential elements for a contract are (1) 'parties capable of contracting'; (2) '*their consent*;' (3) 'a

2   lawful object;' and (4) 'sufficient cause or consideration.'" (emphasis added) (quoting Cal. Civ.

3   Code § 1550)).  Here, Ms. Klink vehemently contended in her opposition and declaration in

4   support thereof that she did not sign or otherwise provide her consent to ABC's arbitration

5   agreement.  *See* Opp'n. at 7.

6          ABC responded that Ms. Klink provided her consent to the arbitration agreement

7   electronically.  Mot. to Compel at 5.  Under California law, "[a] record or signature may not be

8   denied legal effect or enforceability solely because it is in electronic form," and "[a]n electronic

9   record or electronic signature is attributable to a person if it was the act of the person."  Cal. Civ.

10   Code § 1633.7(a).  An act of the person may be shown in any manner, including "a showing of the

11   efficacy of any security procedure applied to determine the person to which the electronic record

12   or electronic signature was attributable."  Cal. Civ. Code § 1644.9(a).

13          To support its argument that Ms. Klink electronically consented to the agreement, ABC

14   cited *Rezaeian v. Starbucks Corporation*, where the court found that an employee consented to the

15   arbitration agreement electronically by clicking through the agreement and providing a "click

16   signature."  No. 16-04599, 2017 U.S. Dist. LEXIS 102677, at *16–*17 (C.D. Cal. Feb. 8, 2017).

17   The plaintiff was a former employee who claimed harassment and wrongful termination.  *Id.* at

18   *1–2.  In response to the employee's complaint, Starbucks asserted an arbitration agreement that

19   was presented to the employee electronically as part of her hiring process.  *Id.* at *3.  Starbucks

20   explained that the plaintiff's employment was contingent on her assenting to the arbitration

21   agreement, and she would not have been able to submit her application without first

22   acknowledging the agreement with a click signature.  *Id.* at *17-18.  The plaintiff did not deny

23   signing the arbitration agreement, only that she did not recall doing so; the court compelled the

24   parties to arbitration.  *Id.* at *6.

25          Although the Ninth Circuit has not ruled on this question, federal district courts and state

26   courts in California have consistently found testimony from human resources officials sufficient to

27   establish the validity of an electronic signature.  For example, in *Gonzalez v. Ceva Logistics U.S.,*

28   *Inc.*, the court found the declaration of a human resources director detailing the defendant's

practices and procedures for online job applications requiring the applicant to electronically acknowledge an arbitration agreement before they could submit the application sufficient to show that the electronic signature was the act of the plaintiff.  No. 16-CV-04282-WHO, 2016 WL 6427866, at *3 (N.D. Cal. Oct. 31, 2016).  The HR director's declaration in that case was "adequate evidence that only [the plaintiff] could have filled out this form, that the document could not have been altered after it was submitted, and that [the plaintiff] herself signed the arbitration agreement."  *Id.*; *see also Hose v. Wash. Inventory Servs., Inc.*, No. 14CV2869-WQH-WVG, 2016 WL 6427810, at *6 (S.D. Cal. Aug. 30, 2016) (based on witnesses and declarations of the Human Resource Director, "the Court finds that there is evidence in the record that the [plaintiffs] signed the [arbitration agreements]" in spite of plaintiffs' argument that they did not recall signing the agreements).

In contrast, the court in *Ruiz v. Moss Bros. Auto Group, Inc.*, found that an employer's unsupported assertion that the employee was the person who electronically signed an agreement was insufficient to prove that the electronic signature was, in fact, the act of the employee, as required by section § 1633.9 of the California Civil Code.  *See* 181 Cal. Rptr. 3d 781, 783 (Ct. App. 2014).  The defendant asserted in its initial declaration that Ruiz electronically signed the arbitration agreement "on or about September 21, 2011."  *Id* at 788.  But the defendant did not explain how it arrived at that conclusion; it never explained how Ruiz's printed electronic signature, or the date and time came to be placed on the agreement, and how the HR official ascertained that the electronic signature was "the act of" Ruiz.  *Id.*  The court explained that had the defendant showed that Ruiz used a unique login ID and password to access the agreement or proven that the date on the agreement indicated when the signature was made, that would have been enough to validate the agreement.  *Id.*  But because the plaintiff did not recall signing the agreement, the defendant did not meet its evidentiary burden to establish a valid arbitration agreement without further explanation.  *Id.*

The present case falls in between *Rezaeian*, *Gonzalez*, and *Hose*, on one side, and *Ruiz* on the other.  Unlike in *Ruiz*, ABC's Patel declaration clearly explained how ABC inferred that the electronic acknowledgement of the arbitration agreement was the act of Ms. Klink.  181 Cal.

1   Rptr.3d at 788; *see* Patel Decl.  Ms. Patel was the Senior Manager of Content Development within

2   ABC's training department during Ms. Klink's employment.  Patel Decl. ¶ 2.  She explained that

3   when Ms. Klink was on-boarded, ABC's HR department "provided her with a unique username to

4   be used to access the LMS and ABC's intra-net." *Id.* ¶ 5.  And when Ms. Klink's first logged in,

5   "the LMS system required her to create a new personal password, that employees were instructed

6   to keep confidential." *Id.* ¶ 6.  Ms. Patel then explained that "on the day of Plaintiff's onboarding

7   8/24/2008, the LMS indicated that she completed two 'courses'" reviewing and acknowledging

8   the arbitration agreement. *Id.*  For Ms. Klink to access and complete these courses, "she had to

9   input her username and password, after which, she could launch the course and a PDF of the

10   Arbitration Agreement displayed." *Id.*  The form that appeared after Ms. Klink read the arbitration

11   agreement displayed language stating that by clicking a button labeled "Acknowledge," she was

12   agreeing to the terms of "Arbitration Agreement of ABC Phones - NC." *Id.* ¶ 7.  Finally, Ms.

13   Patel explained that "[t]he LMS system recorded the date that Plaintiff Klink completed the…

14   Arbitration Agreement as September 24, 2018, by inputting the designation 'Completed' for both

15   courses." *Id.* ¶ 15.  ABC also supplied a copy of Ms. Klink's LMS report confirming these details.

16   *Id.* Exhibit C.

17        However, unlike *Rezaeian, Gonzalez,* and *Hose*, Ms. Patel's declaration was insufficient to

18   establish conclusively that Ms. Klink electronically signed the agreement here because Klink

19   unequivocally denied reviewing or acknowledging the arbitration agreement.  Klink Decl. ¶ 12.

20   By contrast, the plaintiffs in *Rezaeian, Gonzalez,* and *Hose*, stated only that they did not *recall*

21   signing an agreement.  2017 U.S. Dist. LEXIS 102677 at *16; 2016 WL 6427866 at *3; 2016 WL

22   6427810 at *6.  In contrast, Ms. Klink "dispute[d] signing the Arbitration Agreement… [and

23   claimed] there [was] no evidence in the record which definitively establishes that the clicking of

24   the 'Acknowledge' button is an act attributable to Ms. Klink."  Opp'n. at 10; Klink Decl. ¶ 13.

25        To further build doubt, Ms. Klink argued that ABC could not show that she was the one

26   who clicked the acknowledge button because her manager was in the room when she created her

27   password and entered it on LMS for the first time.  Opp'n. at 2.  According to Ms. Klink, the store

28   manager—Mr. Cagle—gave her a unique username on her first day but was "present and

United States District Court
Northern District of California

1  observed" her input her username and new password into the LMS.  Klink Decl. ¶ 6.  Ms. Klink

2  also stated that she believes her "former manager kept a record of Ms. Klink's username and

3  password and could access her account."  *Id.*  Ms.  Put differently, Ms. Klink contends Mr. Cagle

4  was in a position to access her account and fraudulently consent to the arbitration agreement on

5  her behalf.  Opp'n. at 3.  Admittedly, Ms. Klink did not explain why the manager would be

6  motivated to secretly log onto her profile to complete the agreement, nor did she provide any

7  evidence to support her conclusory statement beyond her self-serving declaration.  *See* Opp'n.;

8  Reply at 5.

9         Ms. Klink also speculated that the arbitration agreement may have been completed by one

10  of her co-workers with whom she shared her credentials "if the individual's login information was

11  not working."  Klink Decl. ¶ 8.  However, Ms. Klink's arbitration agreement was acknowledged

12  on her first day of work.  Patel Decl. Exhibit C.  She would have had to share her password with a

13  co-worker, and that co-worker would have needed to complete the agreement under Ms. Klink's

14  profile, *that same day*.  *See* Klink Decl. ¶ 8.  Again, Ms. Klink did not provide any explanation as

15  to why a co-worker would have been motivated to do this or who could have committed this

16  fraudulent act.  *See* Klink Decl.  Without additional support, the Court could not conclude, based

17  solely on Ms. Klink's self-serving declaration, that a co-worker likely consented to the agreement

18  on her behalf.

19         Ms. Klink further contended that she could not have acknowledged the arbitration

20  agreement because it is "not credible" to think she completed over one hundred assignments in 6.5

21  hours on her first day.  Opp'n. at 8.  However, Ms. Klink did not allege in her declaration that the

22  number of on-boarding assignments she completed on September 24, 2018 was overwhelming or

23  unrealistic, and there was no evidence to suggest that the one hundred tasks were unreasonable.

24  *See* Klink Decl.; Opp'n.  ABC also presented reply evidence stating that there was nothing

25  unusual about the number of items Ms. Klink completed on her first day.  *See* Docket No. 19-1

26  ("Biscardi Decl.") ¶¶ 4–5.  According to another employee hired to a similar position by ABC in

27  2018, she finished twice the number of tasks on her first day as Ms. Klink.  *Id.*  This employee

28  further explained that each assignment took less than one minute to complete.  *Id.*  So, it is at least

United States District Court
Northern District of California

possible that Ms. Klink reviewed all one hundred tasks, including the arbitration agreement, on her first day.  Reply at 6.

Ms. Klink also argued that she could not have electronically signed the arbitration agreement because she hand-signed other on-boarding documents.  Klink Decl. ¶ 4 ("During the onboarding process, I was provided with hard copies of various documents that I was required to review and sign.  I signed each of these hard copy documents by hand.  I did not hand sign any arbitration agreement.").  ABC's agent, however, presented credible evidence that in 2018 ABC had "no mechanism for distributing or retaining hand-signed on-boarding documents . . .  Every record Defendant has in connection with Plaintiff is electronic."  Reply at 7.  The LMS record provided clear documentation that all of Ms. Klink's on-boarding was conducted on ABC's intranet system, not in hard copy.  Patel Decl. Exhibit C.

Furthermore, unlike in *Rezaeian*, Ms. Klink contended that she was never notified that she was required to complete the LMS courses, including the arbitration agreement, to become a commissionable employee.  *Compare* 2017 U.S. Dist. LEXIS 102677 at *16, *with* Klink. Decl.  Ms. Klink asserted that she had no reason to know there was an arbitration agreement in her on-boarding documents or that her employment hinged on its completion.  Opp'n. at 10.  But ABC introduced an email sent to Ms. Klink on September 24, 2018, stating that that "[a]ll new hires will remain in a NON-COMMISSIONALBE status while required trainings are being completed.  Upon completing the courses, your status will change to COMMISSIONALBE[.]"  Docket No. 19-2 ("Granados Decl."), Exhibit G.  This email established that Ms. Klink knew or should have known that completing her on-boarding assignments, including the arbitration agreement, was required to begin earning commissions.

In any case, even if Ms. Klink could not earn commissions before signing the arbitration agreement, ABC provided no evidence—unlike in *Rezaeian* or *Gonzalez*—that Ms. Klink could not start working without finishing her on-boarding tasks.  *See* Mot. to Compel; Reply.  This means there was a possibility that Ms. Klink could have started working for ABC even if she left the arbitration agreement unacknowledged.  2017 U.S. Dist. LEXIS 102677 at *16; 2016 WL 6427866, *3; *see* Mot. to Compel; Patel Decl.; *see also* Klink Decl. ¶ 12 (stating that there is "no

1   evidence that employees could not begin working without signing the Arbitration Agreement").

2          Taking all these competing facts into consideration, the Court determined that ABC's

3   papers and declarations did not conclusively prove by a preponderance of the evidence that an

4   arbitration agreement existed between the parties, and that there was a factual dispute about Ms.

5   Klink's consent thereto.  Even though under a summary judgment standard, "a self-serving

6   declaration does not always create a genuine issue of material fact . . . [and] [t]he district court can

7   disregard a self-serving declaration that states only conclusions and not facts[,]" *Anderson v. City*

8   *& Cnty. of San Francisco*, 169 F. Supp. 3d 995, 1024 (N.D. Cal. 2016), the Court must "constru[e]

9   all facts and reasonable inferences that can be drawn from those facts in a light most favorable to

10  [Ms. Klink]," *Chavez*, 2011 WL 4712204 at *3.  It is true that Ms. Klink made the self-serving

11  conclusory statement that she "did not click on the computer button to acknowledge review and

12  accept[] the arbitration agreement."  Klink Decl. ¶ 12.  But she also alleged facts – that, *e.g.*, her

13  manager being in the room when she created her unique password and ABC's failure to establish

14  that Ms. Klink could not have started working without completing her on-boarding tasks – to sew

15  doubt and create a genuine issue of material fact regarding the existence of an agreement.  Klink

16  Decl. ¶¶ 6-12.

17          Accordingly, the Court concluded there was a genuine issue of material fact as to whether

18  Ms. Klink signed ABC's arbitration agreement.

19          2.      Ms. Klink Was Entitled to an Evidentiary Hearing, Not a Jury Trial

20          Having determined that there was a genuine issue of material fact as to the existence of an

21  arbitration agreement between the parties, the Court decided to hold an evidentiary hearing

22  pursuant to § 4.  While § 4 of the FAA allows for a jury trial, to proceed to a jury trial, "the party

23  alleged to be in default may . . . on or before the return day of the notice of application, demand a

24  jury trial of such issue, and upon such demand the court shall make an order referring the issue or

25  issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially

26  call a jury for that purpose."  9 U.S.C. § 4.  This means that if a party fails to request a jury trial on

27  or before the return date of an arbitration petition, the party waives its right to a jury trial on the

28  issue of whether an agreement to arbitrate exists.  *See id.*  And "if no jury trial be demanded by the

United States District Court
Northern District of California

party alleged to be in default . . . the court shall hear and determine such issue." *Id.*

The Supreme Court and the Ninth Circuit have not yet "determined whether a general demand for a jury trial satisfies the FAA's procedure" to preserve a party's right to a jury trial under § 4. *Mendez v. LoanMe, Inc.*, No. 20-cv-00002-BAS-AHG, 2020 WL 6044098, at *14-15 (S.D. Cal. Oct. 13, 2020). The courts of appeals that have addressed this question agree that a specific jury demand for a jury trial on the formation of the arbitration agreement is required under §4. For example, the Eleventh and Fifth Circuits agree with the majority of district courts that § 4's "use of the term 'such issue,' contemplates that a party must make a *specific* demand for a jury trial on a *specific* issue related to the 'making of the arbitration agreement[]' to preserve its right to a jury trial on the issue." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1349 (11th Cir. 2017) (quoting 9 U.S.C. § 4); *see also Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 365 n.5 (5th Cir. 2015) (explaining that a party who had made a timely demand for a jury trial "may have been entitled to a jury trial on [an issue related to the making of an arbitration agreement] if he had requested one, but he did not"). The *Burch* court clearly stated that § 4 "requires a separate jury demand, independent from a general jury demand contained in an initial pleading, filed before the deadline for responding to a motion or application to compel arbitration." *Burch*, 861 F.3d at 1349. Similarly, although the Fourth Circuit did not answer the specificity question, it cited to *Burch* in concluding that, "the party alleged to be in default of the arbitration clauses, could have demanded a jury trial on the Arbitration Motion . . . [and] also presumably have waived a jury and accepted a bench trial." *Berkeley Cty. Sch. Dist. v. Hub Int'l. Ltd.*, 944 F.3d 225, 242 (4th Cir. 2019). All other circuits have not spoken on this issue.

District courts in California, including this district, have consistently relied on *Burch* to require a specific demand for a jury trial on the issue of arbitration before or at the time of opposing a motion to compel arbitration. *See Castillo v. Lowe's HIW, Inc.*, No. C13-4590 TEH, 2013 U.S. Dist. LEXIS 195728, at *1-2 (N.D. Cal. Dec. 2, 2013); *Alvarez v. T-Mobile USA, Inc*, NO. CIV. 2:10-2373 WBS GGH, 2011 WL 6702424, at *1 (E.D. Cal. Dec. 21, 2011); *Fields v. Wise Media LLC*, No. C 12-05160 WHA, 2013 U.S. Dist. LEXIS 202252, at *14-15 (N.D. Cal. Jan. 25, 2013); *Geoffroy v. Wash. Mut. Bank*, 484 F. Supp. 2d 1115, 1119 (S.D. Cal. May 3,

1   2007); *Garbacz v. A.T. Kearny, Inc.*, No. C 05-05404 JSW, 2006 U.S. Dist. LEXIS 20135, at *7

2   (N.D. Cal. Apr. 3, 2006).  This Court agrees.

3        In the case at bar, Ms. Klink would have been entitled to a jury trial to determine the

4   existence of an arbitration agreement had she demanded one "on or before the return day of the

5   notice of application" to submit to arbitration.  *Id*.  Although Ms. Klink made a general demand

6   for a "a jury trial in this matter" in her complaint, Compl. at 29, her opposition did not contain a

7   special demand for a jury trial on whether an arbitration agreement existed.  *See* Opp'n.  Instead,

8   Ms. Klink "request[ed] leave to conduct discovery relating to the formation of the purported

9   agreement, including a deposition of Ms. Patel and Ms. Klink's former direct supervisor."  Opp'n.

10   at 24.  The Court therefore concluded that Ms. Klink waived her right to a jury trial because she

11   failed to specifically demand a jury trial on the issue of arbitration on or before the motion to

12   compel arbitration was filed.  *See* Opp'n.

13        Accordingly, the Court held an evidentiary hearing on June 8, 2021, to give ABC an

14   opportunity to establish the existence of a valid arbitration agreement by a preponderance of the

15   evidence.

16        3.   <u>ABC Established the Existence of an Arbitration Agreement At the Evidentiary</u>

17           <u>Hearing</u>

18        At the evidentiary hearing, ABC established by a preponderance of the evidence that the

19   parties entered into an arbitration agreement.  The Court made three factual findings that support

20   this conclusion.  First, ABC introduced incontrovertible record evidence that Ms. Klink clicked

21   on, reviewed, and acknowledged the arbitration agreement on the LMS system.  The LMS

22   system's time-stamped records unequivocally show that she completed the arbitration agreement

23   module on the LMS system on her first day working for ABC, Monday, September 24, 2018, at

24   4:36 p.m. PST.  Ms. Klink failed to refute this.

25        Second, ABC introduced record evidence entirely contradicting Ms. Klink's assertion in

26   her declaration that her immediate supervisor and the store's manager, Mr. Cagle, was present

27   when she completed the arbitration agreement module, observed her enter the password, and kept

28   a copy of her username and password.  In fact, evidence at the hearing established that Mr. Cagle

United States District Court
Northern District of California

was out sick that day and the following day, Tuesday, September 25, 2018.[1]  ABC also introduced evidence showing that it would have been impossible for Ms. Klink to access the LMS system on her first day without creating a unique password.  This means that she is the only person who could have completed the arbitration agreement module on the LMS system on that day, and that if she ever shared her password with Mr. Cagle—or any other ABC employee, for that matter—it would have been *after* completing the module.

Finally, Ms. Klink's counsel argued that the title and descriptor of the arbitration agreement module on the LMS system misled Ms. Klink into thinking she was exempt from the agreement.  Indeed, the record of the arbitration agreement module in the LMS transcript, on which ABC relied on to establish the time of Ms. Klink's acknowledgement—showed that the title of the document Ms. Klink acknowledged was "8.2019 ALL STATES *EXCEPT CA* Arbitration Agreement" and the description was "The Arbitration Agreement between Employees of ABC Phones of North Carolina.  Required by all employees (*CA exempt*)":

///

///

///

///

///

///

///

///

///

///

///

---

[1] The Court concludes that Ms. Klink's declaration and testimony are not credible.  She admitted that Mr. Cagle was not with her on her first day after ABC confronted her with record evidence showing as much, yet she never bothered to correct her sworn declaration, which had been filed with the Court.  Instead, she cited "memory issues" at the evidentiary hearing to excuse the inconsistencies between her declaration and the uncontroverted record evidence that Mr. Cagle was not present on her first day.

United States District Court
Northern District of California

United States District Court
Northern District of California

**Transcript: Ariel Klink**

**Training Details**

Training Type: Publications
Provider: A Wireless, Inc.
Version: 1.0
Training Hours: 0 Hours 3 Minutes
Description: The Arbitration Agreement between Employees and ABC Phones of North Carolina. Required for all employees (CA exempt).
Resources: 8.2019 ALL STATES EXCEPT CA Arbitration Agreement
Training Purpose:
Due Date: None
Target Audience:

**Acknowledge Completion**

*Ariel Klink*     Signed on 9/24/2018 7:36:06 PM
(Ariel Klink)

**Assignment and Version History**

| Registration Number | Latest Registration? | Delivery | Transcript Delivery Method | Version | Effective Date | Start Date | End Date | Due Date | Status | Options |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Yes | Started by Ariel Klink on 9/24/2018 7:35:58 PM | System Assignment (LAT) | 1.0 | 3/14/2017 | None | None | None | Completed | |
| 1 | Yes | Assigned by Michael Arellano on 9/24/2018 10:19:27 AM | System Assignment (LAT) | 1.0 | 3/14/2017 | None | None | None | Completed | |

**Transcript History**

Completed by Ariel Klink (026841) on 9/24/2018 7:36:06 PM
Signed by Ariel Klink (026841) on 9/24/2018 7:36:06 PM Comments: Please sign to acknowledge you understand the information and policies presented to you in this course.
Started by Ariel Klink (026841) on 9/24/2018 7:35:58 PM
Registered by Learning Assignment Tool (300) on 9/24/2018 10:19:28 AM
Assigned by Learning Assignment Tool (300) on 9/24/2018 10:19:27 AM Comments: Initial Request

\* Time Zone: (UTC-05:00) Eastern Time (US & Canada)

Exhibit 51 (emphases added).  ABC explained, however, that Exhibit 51 was an after-the-fact transcript that represented the administrator's view of what Ms. Klink acknowledged, not a screenshot of what Ms. Klink saw when she acknowledged the module on the LMS system.  In other words, ABC contended Ms. Klink never saw the title and description in Exhibit 51.  The Court therefore instructed ABC to submit a declaration to the Court showing exactly what Ms. Klink saw when she acknowledged the arbitration agreement through the LMS system.

The day after the evidentiary hearing, ABC submitted a supplemental declaration from Vanessa Biscardi, ABC's Content Development Specialist, attaching screenshots of the LMS system replicating exactly what Ms. Klink saw when she completed the arbitration agreement module on September 24, 2018.  *See* Docket No. 30 ("Suppl. Biscardi Decl.") ¶¶ 1–14.  Those screenshots establish that the title of the arbitration agreement Ms. Klink saw, clicked on,

15

reviewed, and acknowledged on that day was "Arbitration Agreement of ABC Phones – NC" and

that  the descriptor was "Arbitration Agreement ABC Phones of North Carolina":





United States District Court
Northern District of California

United States District Court
Northern District of California



17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

United States District Court
Northern District of California



22  *Id.* Exs. 22–26.  In other words, these screenshots establish that Ms. Klink never encountered the

23  words "CA exempt" or any other similar language suggesting that the arbitration agreement she

24  signed did not apply to ABC employees in California.

25          Accordingly, based on the evidence presented at the evidentiary hearing and in Ms.

26  Biscardi's supplemental declaration, the Court concludes that ABC has established, by a

27  preponderance of the evidence, that Ms. Klink clicked on, reviewed, and acknowledged the

28  arbitration agreement.

18

B.     The Arbitration Agreement Is Enforceable

Having determined that Ms. Klink and ABC entered into an arbitration agreement, the Court then proceeds to evaluate whether that agreement was enforceable and conscionable.  The Ninth Circuit has noted that "[t]he Supreme Court's holding that the FAA preempts state laws having a 'disproportionate impact' on arbitration cannot be read to immunize all arbitration agreements from invalidation no matter how unconscionable they may be, so long as they invoke the shield of arbitration."  *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013); *see also Kilgore v. KeyBank, Nat. Ass'n.*, 673 F.3d 947, 963 (9th Cir. 2012) ("*Concepcion* did not overthrow the common law contract defense of unconscionability whenever an arbitration clause is involved.  Rather, the Court reaffirmed that the savings clause preserves generally applicable contract defenses such as unconscionability, so long as those doctrines are not applied in a fashion that disfavors arbitration.").  But the party opposing enforcement must prove by a preponderance of the evidence that there is a defense to prevent compelling arbitration when there is a valid agreement.  *Bruni v. Didion*, 73 Cal. Rptr. 3d 395, 404 (Ct. App. 2008) ("The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.").

Ms. Klink argues the arbitration agreement is unconscionable.  Opp'n. at 1.  Under California law, therefore, she must prove both procedural and substantive unconscionability to invalidate the arbitration agreement.  *See Tompkins*, 840 F.3d at 1023 (citing *Armendariz v. Found. Health Psychcare Servs.*, 6 P.3d 669, 690 (Cal. 2000)).  However, "[a] sliding scale is applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Serafin v. Balco Props. Ltd., LLC*, 185 Cal. Rptr. 3d 151, 160 (Ct. App. 2015).  When evaluating procedural unconscionability, courts focus on oppression or surprise that results from unequal bargaining power; while evaluating substantive unconscionability, courts are more concerned with overly harsh or one-sided results.  *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 194 (Cal. 2013).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Although Ms. Klink has shown slight procedural unconscionability because the parties'
arbitration agreement is a contract of adhesion, she fails to establish that the agreement is plagued
with significant substantive unconscionability to be considered unenforceable under the sliding
scale applied to the unconscionability analysis under California law. *Serafin,* 185 Cal. Rptr. 3d at
160. In fact, virtually identical provisions have been found to be conscionable by other California
district courts, and Judge Staton of the Central District of California correctly found that this exact
agreement was enforceable. *See Itkoff v. ABC Phones of N.C., Inc.*, No. 8:17-cv-02043-JLS-JDE,
2018 WL 6242158 (C.D. Cal. Oct. 11, 2018)

    1.    <u>Procedural Unconscionability</u>

"Procedural unconscionability concerns the manner in which the contract was negotiated
and the respective circumstances of the parties at that time, focusing on the level of oppression and
surprise involved in the agreement." *Chavarria*, 733 F.3d at 922. "Oppression addresses the
weaker party's absence of choice and unequal bargaining power that results in 'no real
negotiation.'" *Id.* "Surprise involves the extent to which the contract clearly discloses its terms as
well as the reasonable expectations of the weaker party." *Id.*

The arbitration agreement here involves some procedural unconscionability because it is a
contract of adhesion, meaning that ABC drafted the agreement and presented it to Ms. Klink on a
"take it or leave it" basis. *See* Patel Decl. ¶ 13. Ms. Klink did not have an opportunity to
negotiate its terms, and if she refused to sign, she would not have been eligible to earn
commissions. Patel Decl. ¶ 8. A contract of adhesion is procedurally unconscionable. *Ting v.
AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) ("A contract is procedurally unconscionable if it is a
contract of adhesion, *i.e.,* a standardized contract, drafted by the party of superior bargaining
strength, that relegates to the subscribing party only the opportunity to adhere to the contract or
reject it.'"). However, this finding of procedural unconscionability alone is not enough to deny a
motion to compel arbitration. *Lane v. Francis Capital Mgmt. LLC*, 168 Cal. Rptr. 3d 800, 810 (Ct.
App. 2014) ("[C]ourts have consistently held that [a contract of adhesion] alone is insufficient to
invalidate an arbitration agreement: Rather, an adhesion contract remains fully enforceable unless
… the provision falls outside the reasonable expectations of the weaker party or it is

United States District Court
Northern District of California

1   unconscionable.").  The court in *Lane* reversed the trial court's improper denial of a petition to

2   compel arbitration because the plaintiff could not prove any substantive or procedural

3   unconscionability beyond the contract of adhesion, and the matter was remanded back to the trial

4   court to issue an order compelling arbitration.  *Id.* at 693.  *See also O'Donoghue v. Sup. Ct.*, 161

5   Cal. Rptr. 3d 609, 620 (Ct. App. 2013) (finding that a declaration that "agreements were presented

6   in 'take-it-or-leave-it manner'… does not carry the day… because the 'adhesive aspect' of a

7   contract 'is not dispositive' on the issue of unconscionability").  As in *Lane* and *O'Donoghue*, the

8   agreement here is a contract of adhesion, but the adhesive nature of the agreement only results in a

9   minimal finding of procedural unconscionability and is not enough to render the agreement

10  unenforceable.  168 Cal. Rptr. 3d at 810; 161 Cal. Rptr. 3d at 620.

11       Ms. Klink also asserts that the arbitration agreement is procedurally unconscionable

12  because it was not set apart from the over one hundred other on-boarding modules she completed

13  on her first day on the LMS system.  Opp'n. at 15.  But Ms. Klink does not cite to a single case for

14  the proposition that a large number of training documents establishes procedural

15  unconscionability, let alone enough unconscionability to make an agreement unenforceable.  *See*

16  *id.*  The opposition's conclusory statement that "Plaintiff would have no reason to believe that a

17  legal agreement wherein she would be asked to waive her right to pursue any claims before a jury

18  in a court would be buried amongst [routine] policies," is not supported in Ms. Klink's

19  declaration.  *Id.*  She never expressed that she was overwhelmed by the on-boarding process or

20  that she did not diligently complete her LMS tasks.  *See* Klink Decl.  Moreover, ABC submitted a

21  declaration from another employee who completed twice as many courses as Ms. Klink on her

22  first day.  Biscardi Decl. ¶¶ 4-5; *See* Klink Decl.  The arbitration agreement was a separate module

23  and not, *e.g.*, buried in a long complex document.

24       Finally, Ms. Klink argues that ABC's failure to attach the applicable AAA rules referenced

25  in the agreement "adds an unconscionable procedural hurdle" invalidating the agreement.  Opp'n.

26  at 16.  But the California Supreme Court has held that a party's "failure to attach the AAA rules"

27  does not raise the level of procedural unconscionability where the plaintiff's "challenge to the

28  enforcement of the agreement has nothing to do with the AAA rules" and concerns only "matters

21

that were clearly delineated in the agreement she signed." *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 13 (Cal. 2016). Here, as in *Baltazar*, Ms. Klink's substantive unconscionability arguments pertain to the cost splitting provision, unilateral modification rights, and the Private Attorneys General Act (PAGA) waiver, none of which implicate the AAA rules. Opp'n. at 17-22.

As a result, ABC's failure to attach the AAA rules does not raise the level of procedural unconscionability in the instant case. *Baltazar*, 367 P.3d 6, 13.

### 2.    Substantive Unconscionability

Since Ms. Klink has only established a minimal amount of procedural unconscionability, the Court can only compel arbitration if it also finds significant substantive unfairness. *Ajamian v. CantorCO2e, L.P.*, 137 Cal. Rptr. 3d 773, 794 (Ct. App. 2012) ("Where… the degree of procedural unconscionability… is low, [] the agreement will be enforceable unless the degree of substantive unconscionability is high."). Under California law, substantive unconscionability focuses on the terms of the agreement and whether those are "overly harsh" or "one-sided." *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002); *Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 984 (Cal. 2003).

Ms. Klink first argues that the arbitration agreement is substantively unconscionable because the cost splitting provision threatens employees "with the cost of arbitration as part of an overarching effort to prevent employees from filing employment claims of any kind against Defendant." Opp'n. at 18. The relevant part of the agreement states that, "[t]he cost of arbitration, including the Arbitrator's fees, will be allocated and paid *in accordance with then-applicable law*. If required by applicable law, Company will pay all of the Arbitrator's fees and the arbitration-related costs." Patel Decl. Exhibit A ¶ 6 (emphasis added). In California, applicable law provides that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 6 P.3d at 687. Therefore, because the arbitration agreement applies California law, ABC is prohibited from requiring Ms. Klink to bear any type of expense in arbitration that she would not bear if she were free to bring this action in court. As such, the cost

22

provision is not unconscionable.  *Id;* Patel Decl. Exhibit A ¶ 5*; see also Jackson v. Rent-A-Ctr. W., Inc.*, 581 F.3d 912, 919 (9th Cir. 2009) (finding no substantive unconscionability where "the agreement itself effectively states that the fee-sharing provision is inapplicable if it is unconscionable under [applicable state] law"), *rev'd on other grounds*, 561 U.S. 63 (2010).  The cost provision here is unlike those which state, *e.g.*, that costs of arbitration are to be split which then rely on a court's invocation of *Armendariz* to save it.  In those cases, it could well be argued that the chilling effect of such explicit language would effectuate substantive unconscionability.  Many employees would not know about their rights under *Armendariz.*  But the agreement here makes an explicit nod to applicable law and acknowledges the Company may be required to pay all fees and costs.

Second, Ms. Klink argues that the arbitration agreement is substantively unconscionable because it gives ABC unilateral modification rights.  Opp'n. at 20.  Section 8 of the agreement states that it may only be modified "in a writing expressly referencing this Agreement and issued by the Company's President.  If any modification has not been signed by Employee but Employee continues to accept employment or other benefits from Company after having notice of the modification, the modification will become effective after a reasonable time."  Patel Decl. Exhibit A ¶ 8.  However, Ms. Klink admits that the "right to unilaterally modify is not unconscionable," and is just a factor in the unconscionability analysis.  Opp'n. at 21.  As articulated by Ms. Klink, the court in *Tompkins* explained that "although . . . a unilateral mediation provision itself may be unconscionable . . . such an unconscionable provision [does not] make[] the arbitration provision or the contract as a whole unenforceable."  840 F.3d at 1033.  In other words, if the unilateral right to modify is the only unconscionable provision, the Court should not rely on it alone to refuse to enforce the agreement.  *Id.*  But if there is more than one unconscionable provision, the right to unilaterally modify the agreement is a factor to be considered.  *Id.*  In any case, even if the unilateral modification provision were unconscionable, ABC has stated that it would be willing to sever that provision and enforce only the rest of the agreement.  Reply at 10.

Third, and finally, Ms. Klink argues the PAGA waiver in the agreement makes it unenforceable.  Opp'n. at 22.  ABC does not dispute that the PAGA waiver in section 3 of the

United States District Court
Northern District of California

agreement is unenforceable because California law does not allow an employee to waive representative PAGA claims. Mot. to Compel at 6. The disagreement between the parties is on whether the PAGA waiver can be severed from the rest of the agreement. Opp'n. at 22; Mot. to Compel at 6. California law states that "a court should sever an unconscionable provision unless the agreement is so 'permeated' by unconscionability that it cannot be cured by severance." *Serafin*, 185 Cal. Rptr. 3d at 165. The California Supreme Court has also recognized that multiple unconscionable provisions "indicate a systematic effort to impose arbitration on an employee." *Armendariz*, 6 P.3d at 697. The dispositive question, therefore, is whether "the central purpose of the contract is [so] tainted with illegality" that there is no lawful object of the contract to enforce. *Marathon Entm't, Inc. v. Blasi*, 174 P.3d 741, 743 (Cal. 2008). Severance is appropriate where "the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction." *Armendariz*, 6 P.3d at 697.

Courts consistently sever PAGA waivers, especially when there is an express severance clause. In *Shepardson v. Adecco USA, Inc.*, for example, this Court granted a defendant's motion to compel arbitration after severing the PAGA wavier and staying the PAGA claims pending arbitration. No. 15-cv-05102-EMC, 2016 U.S. Dist. LEXIS 46754, at *1-2 (N.D. Cal. Apr. 5, 2016) (Chen, J.). In *Shepardson*, like here, the plaintiff filed a class action lawsuit against defendant Adecco USA, Inc., asserting various wage and rest break violations, unfair business practices, and PAGA penalty claims. *Id.* at *1. Adecco then filed a motion to compel arbitration pursuant to an arbitration agreement that the plaintiff signed after she was hired. *Id.* This Court found that since the Agreement clearly stated that "[i]f any provision(s) of this Dispute Resolution Agreement is declared overbroad, invalid or unenforceable such provision(s) shall be severed from this Dispute Resolution Agreement," it was appropriate to sever the PAGA waiver pursuant to the Agreement's terms. *Id.* at *18-19. Here, the agreement likewise has a severability clause, such that severing the PAGA waiver would not require the court to rewrite the agreement in any way:

> If any term or portion of this Agreement will, for any reason, be held to be invalid or unenforceable or to be contrary to public policy or any law, then the remainder of this Agreement will not be affected

1

> by such invalidity or unenforceability but will remain in full force
> and effect, as if the invalid or unenforceable term or portion thereof
> had not existed within this Agreement.

2

3   Patel Decl. Exhibit A ¶ 7.  As in *Shepardson*, the severability provision favors severing the

4   unenforceable PAGA waiver pursuant to the agreement's terms and enforce the rest of the

5   arbitration agreement.  2016 U.S. Dist. LEXIS 46754, at *18-19.

6        Importantly, the Central District of California in *Itkoff* found this exact arbitration

7   agreement enforceable and chose to compel arbitration.  2018 WL 6242158 at *24.  The same trial

8   court also enforced this agreement in two additional cases: *Akrami v. ABC Phones of North*

9   *Carolina, Inc.* and *Aguilar v. ABC Phones of North Carolina, Inc.*  Mot. to Compel at 7; Docket

10  No. 15-2 ("Gray Decl.") ¶ 5.

11       In sum, the only unconscionability Ms. Klink was able to establish was slight procedural

12  unconscionability from the agreement being a contract of adhesion.  There was no substantive

13  unconscionability other than the unilateral modification provision (section 8) and the PAGA

14  waiver (section 3), which the Court hereby severs.  And, as noted, there is no anti-*Armendariz*

15  clause which would likely cast a chilling effect regarding arbitration fees and costs.  Accordingly,

16  because Ms. Klink has not proven by a preponderance of the evidence that the arbitration

17  agreement is permeated with unconscionability, the Court will enforce the agreement, except for

18  sections 3 and 8.

19  C.   Dismissal of Class Action Claims

20       Because the Court enforces the arbitration agreement, it also dismisses the non-PAGA

21  class action claims in adherence with the class action waiver in the arbitration agreement.  Patel

22  Decl. Exhibit A ¶ 3(e).  Ms. Klink does not raise any objection to ABC's motion to dismiss the

23  class action claims.  *See* Opp'n.  Patel Decl. Exhibit A ¶ 3(e) ("Both the Company and Employee

24  agree to bring any dispute in arbitration on an individual basis only").

25       Accordingly, Ms. Klink will have to proceed to arbitrate all non-PAGA claims on an

26  individual basis.

27  D.   Stay Pending Arbitration

28       Similarly, Ms. Klink does not disagree that this suit should be stayed pending arbitration.

United States District Court
Northern District of California

*See* Opp'n.  A court may stay proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254, (1936).  Use of this power "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  *Id.* at 254-55; *see also Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) ("[T]he district court did not abuse its discretion by staying the action pending receipt of the results of arbitration.").

      Accordingly, the Court uses its discretion to stay this suit until the conclusion of arbitration.

## IV.    <u>CONCLUSION</u>

      For the foregoing reasons, the Court **GRANTS in part** ABC's motion to compel all provisions of the parties' arbitration agreement except for the PAGA waiver (section 3) and the unilateral modification provision (section 8).  The Court also dismisses the non-PAGA class allegations and stays this action pending the arbitration of the non-PAGA individual claims.

      This order disposes of Docket No. 15.

      **IT IS SO ORDERED**.

Dated: August 20, 2021

_____
EDWARD M. CHEN
United States District Judge